**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AFTAB A. KHAN,

          Plaintiff,

     v.

HCL AMERICA, INC.,

        Defendant.

No. 21-cv-4827

Honorable Judge Maldonado

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

      Defendant HCL America, Inc. asks for summary judgment in a direct evidence discrimination case. PLAINTIFF, Aftab A. Khan, testified that his immediate supervisor Prakash Chapain, would question him about his age, how long it had been since he attended college, and ask him when he planned on retiring. (Exhibit A, Pl. Dep., pgs. 107, 17- 108, 22). He told Plaintiff he could be replaced by two recent college graduates who could be paid less money. (Id., pg. 218, 8-21). After being placed on a four-week performance improvement plan, he was fired after just two weeks. Chapain told Plaintiff when the plan began that it was just a "stage show" and that he should be looking for a new job. (Ex. A, Pl. Dep., Pg. 157, 1-3). [1]

      Further, the record is clear that Plaintiff had a strong performance review history and was far more experienced and credentialed than the young employees routinely hired and retained by Defendant. (Ex. A., Pl. Dep., Pg 222); Ex. F). Indeed, this is a case where summary judgment is entirely inappropriate.

---

[1] Interestingly, Chapain did not deny making this comment at his deposition. He twice testified instead that "I have no recollection of saying that", despite being asked a second time whether he had told Plaintiff that the performance plan was just a formality or "stage show." (Ex. B, Chapain dep., pgs. 62-24- 64, 5.).

In fact, Defendant has many problems in this case that transcend any attempt to garner summary judgment in its favor. The human resources representative involved in the termination, Lynne Elliott, testified that she made no effort to review Plaintiff's history of positive performance reviews before approving the termination and instead just "took Belmont's word for it." (Ex. D, Elliott Dep., Pg. 18, 14- 20, 23).  She said that human resources representatives would have no way of knowing if a hiring or firing decision was discriminatory, and just "trusts that they know." (Ex. D, Elliott Dep, Pg. 77, 21-24, 78, 1-2). She acknowledged that Plaintiff complained to her that he could not get Chapain to meet with him during the PIP (further corroborating that Chapain had told Plaintiff that it was "a stage show." (Ex. D., Elliott Dep. Pg. 58, 17-23).

Further corroborating Plaintiff's testimony regarding the discriminatory comments that had been made to him regarding the preference for young H1 Visa employees who are "cheaper", is Belmont's estimate that about 30% of Defendant's workforce consists of H1 Visa employees. (Ex. C, Belmont Dep. Pgs. 23 6- 24,4).

Aside from this "direct evidence", Plaintiff argues that the inferential evidence is sufficient to deny summary judgment. Plaintiff's credentials and experience level exceed those of his younger coworkers. Another employee, Chitti Babu, was permitted to transfer jobs "multiple times." (Ex. A, Pl. Dep., Pgs 152,5-155,16). Chapain could not name one H1 Visa who had ever been fired. (Ex. B, Chapain Dep., Pg. 75, 1-8).  In addition, the only other employee that Defendant can point to as a termination was Aaron Baynard, also in the protected age group. (Ex. M, Defendant Supplemental Interrogatory Answers, pg. 2).

I.      **Plaintiff's Direct Evidence Requires Denial of the Summary Judgment Motion**

Plaintiff's proof of discrimination under the "direct evidence" method requires evidence of the expression of a discriminatory intent. *Huff v. UARCO, Inc.,* 122 F. 3d 374 (1997). Here, Plaintiff testified to the array of discriminatory statements made to him by his supervisor Chapain., as summarized above and set out in greater detail with Plaintiff's Rule 56 Statement. One of those- the statements about how the performance improvement plan was simply a "stage show" was not even denied by Chapain at his deposition, stating instead that he simply could not remember if he said such a thing. (Ex. B, Chapain Dep., Pgs. 62, 24- 64,5). And although Defendant asks this Court to draw the inference in its favor that Chapain was not involved in the decision to terminate Plaintiff, it was clearly Chapain who was supposed to administer the performance improvement plan and who testified that he "had the moral obligation to highlight any complaints to my manager." (Ex. B, Chapain Dep., Pg. 40, 11-18).

Indeed, this case is a case in the mold of *Price Waterhouse v Hopkins,* 490 U.S. 228 (1989). Like here, direct discriminatory comments were made and written about the employee, leading the Supreme Court to announce a new analytical framework for cases with this type of evidence- shifting the ultimate burden of proof to the employer to prove that it would have made the same decision even despite its announced discriminatory intent. Subsequently, in 2003, the Supreme Court ruled in *Desert Palace v Costa,* 539 U.S. 90 (2003) that it does not particularly need even "direct evidence" to justify that burden of proof shift- that any combination of strong and suspicious evidence can do so.

Because of this evidence, this case should be decided with reference to similarly discriminatory remarks that defeated summary judgment in other cases. For example, *Joyce v. Chicago Park District*, 483.7 Supp. 678 (N.D. Ill. 2007) statement that employee's problem was that "chicks" were "in charge." *Id., at 684.*

Given that on any motion for summary judgment, all reasonable inferences from the evidence are to be drawn in favor of the non-movant, to seek summary judgment in a case in which the evidentiary burden of proof is likely to be transferred to Defendant is an impossible stretch.

## II.     Summary Judgment Should Be Denied Even in the Absence of Direct Evidence

As noted in *Huff, supra,* a plaintiff can defeat summary judgment through either direct evidence, circumstantial evidence, or a combination. These can include: "1) suspicious timing, ambiguous statements…[2] 2) evidence that employees similarly situated to the plaintiff other than in the characteristic on which the employer is forbidden to base a difference in treatment received systematically better treatment…" *Id. at 380.*

However as many Courts have noted, a plaintiff need not necessarily satisfy either standard to proceed. It is enough if there is evidence that a proscribed factor caused the defendant to take an adverse action against the plaintiff. *Bob-Manuel v. Chipotle Mexican Grill, Inc.,* 10 F. Supp. 3d 854, 874 (N.D. Ill. 2014) citing *Ortiz v. Werner Enterprises, Inc.,* 834 F. 3d 760, 763-66 (7th Cir. 2016).

 Under the purely inferential method, a plaintiff merely need show that 1) he is a member of a protected class, 2) he was meeting his employer's legitimate performance expectations, 3) he suffered an adverse employment action, and 4) other similarly situated employees outside of the protected class were treated more favorably. *Fane v. Locke Reynolds, LLP,* 480 F. 3d 534, 538 (7th Cir. 2007).

 Here Plaintiff has ample evidence from which a jury can draw the inference of discrimination even without Defendant's expressed discriminatory intent.  As set out above and

---

[2] Although in this matter, Chapain's statements are far from "ambiguous."

within Plaintiff's Rule 56 Statement, he is in the protected age group and an American whose national origin is Pakistani, has a significant employment history and history of strong performance reviews, was fired, and was treated less favorably than younger, similarly situated H1 Visa employees. This is clear because he was replaced by someone not within the protected categories[3] and because younger employees and employees on an H1 Visa were transferred from one position to another "seamlessly." (Ex. A, Pl. Dep., pgs. 219- 13; 222-4). In fact, Chapain could not name even one H1 Visa employee who was ever fired by Defendant. (Ex. B, Chapain Dep., 75- 1-8).

### III.    The Cat's Paw Theory Defeats Defendant's Argument that Chapain Was Not the Sole Decision-Maker

The well-established "Cat's Paw" theory explained in *Staub v. Proctor Hosp.,* 562 U.S. 411 (2011) makes clear that employer attempts to insulate themselves from liability by arguing that the open discriminator was not the sole decision-maker must fail.  "Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged and excludes only those links that are too remote, purely contingent, or indirect." *Id, at 419.*  The decision went on to state that a "decision-maker's exercise of judgment does not prevent the earlier agent's action from being the proximate cause of the harm." *Id., at 412.* Worse for Defendant here, however, is that Chapain admitted that he gave his opinion to his supervisor Belmont because he considered it his "moral obligation." (Ex. B, Chapain Dep., pg. 40, 11-18).

### IV.    Defendant's Arguments, Often Based Upon Inadmissible Evidence, are Insufficient to Gain Summary Judgment

---

[3] Although Defendant also makes the point that a part of his job went to an employee over age 40. But that employee, too, was also fired shortly thereafter.

In addition to the "Cat's Paw" argument discussed above, Defendant makes a number of other points which it thinks should entitle it to summary judgment. It relies heavily upon an alleged complaint about Plaintiff by a customer, Cheryl Bork. The Bork evidence is, of course, hearsay. Worse, Chapain could not cite even one example of a criticism allegedly made by Bork. (Ex. B, Chapain Dep., Pg. 38-9; 40-10).

Further, even if there is admissible evidence that Bork did not care for Plaintiff's work (despite his history of positive performance reviews) Plaintiff is entitled to the inference that— in lieu of sudden termination- he could have been transferred to another position given the length and breadth of his experience in this industry. As set out in Plaintiff's Rule 56 Statement, a Chitti Babu was permitted to transfer jobs multiple times. (Ex. A, Pl. Dep., 152:5- 155:16). Plainbtiff observed during his tenure that H1 Visa employees were transferred "seamlessly". (Ex. A, Pl. Dep., Pgs. 219:3-222:4). Chapain could not name even one Indian H1 Visa employee who was ever terminated. (Ex. B, Chapain Dep., Pg. 75:1-8).

Defendant also seeks to highlight what it describes as a negative, combative attitude from Plaintiff at the final discussion prior to his termination. Certainly a jury will find that some degree of negativity and "pushback" from an employee would be normal and expected where the employee had already been told by his supervisor that the entire process was a futile one and that his performance during the PIP was irrelevant. It was just "a stage show" for the benefit of the company.

Defendant further argues- with respect to the national origin claim- that Plaintiff- as an American citizen born in Pakistan- is somehow not covered. But Plaintiff repeatedly points to Indian employees holding H1 Visas who received preferential treatment. It was a Ms. Kasiwal- an Indian in her late twenties- who took over much of Plaintiff's job. (Ex. B, Chapain Dep., Pgs.

14:16-16:2); Exhibit L, Defendant Interrogatory Answers, page 1). Chapain himself announced his preference for the younger and cheaper H1 Visa employees. (Ex. A, Pl. Dep., pg 218:8-21). And the fact that approximately 30% of Defendant's workforce consisted of H1 Visa employees and that no one could recall a single instance in which one of them was fired creates a powerful inference in favor of Plaintiff. The only terminated employees we know of are Plaintiff and over-age 40 American Aaron Baynard.

**V.      The Cases Relied Upon By Defendant are Easily Distinguishable**

Defendant cites a number of decisions that set out general guidance on the determination of discrimination claims, but no case that supports the instant motion.

Defendant cites *Espinosa v. Farah*, 414 U.S. 86 (1973) for the general principle that discrimination on the basis of citizenship is not covered by Title VII.  That is true as far as it goes.  The plaintiff in *Espinosa* alleged that her Mexican citizenship was the cause of the discrimination. *Id., at* 87.  The Title VII Count in the instant case is National Origin discrimination. He alleges that Defendant treated similarly situated H1 Visa employees of Indian national origin in a superior fashion.  But even Defendant admits in its brief at page 8 that Plaintiff "was born in Pakistan and is now an American." It then makes the novel argument that because Plaintiff's "forebears came from British India" he is "culturally Indian" and ineligible to bring a Title VII national origin claim. The argument, of course, would have no logical stopping point. Thus, for example, according to Defendant, an African-American U.S. citizen whose forebears were from South Africa would be barred from bringing a national origin claim claiming that Caucasian South Africans were treated better. That cannot be so. It is clearly enough if the national origin of a plaintiff differs from that of his or her comparators.

7

In an attempt to get around the well-established "Cat's Paw" doctrine, Defendant cites generalized language from decisions holding that a plaintiff's own self-serving opinion about his performance and about a "conspiracy theory" are insufficient, citing *Mills v. First Federal Savings and Loan Assoc. of Belvidere,* 83 F. 3d 833 (7th Cir. 1996) and *Dey v. Colt Const. & Development Co.,* 28 F. 3d 1446 (7th Cir. 1994).  Plaintiff agrees.

But Plaintiff's "self-serving opinion that he was doing great" is hardly "laughable" as Defendant puts it. Here, Plaintiff points to his own history of positive performance appraisals. While Plaintiff agrees with those appraisals, he was not the one who wrote them. Worse, his performance appraisal due prior to his termination was inexplicably never completed- odd, indeed, if an employee's performance has for some reason deteriorated so badly and termination is contemplated.

Further, Plaintiff's theory here is scarcely a "conspiracy theory" in the sense of cases such as *Lugg v. Sutton,* 2021 WL 3673824 (C.D. Ill. August 18) or *Tolson v City of Chicago*, 2016 WL 1043326 (N.D. Ill. March 16). Ostensibly, what Defendant means is that Plaintiff is arguing that a "conspiracy" carried out by Chapain led to the decision to terminate him by others (Belmont and Elliott).

There are a number of things wrong with that theory. For one, Chapain (who was in charge of the PIP) admits that he viewed it as his "moral obligation" to relay to Belmont and Elliott his opinion. Second, Elliott admits that before signing off on the termination she did not review Plaintiff's performance history or even take a look at his personnel file but merely took Belmont's "word for it."  Indeed, cases such as *Lugg* and *Tolson* do not support a summary judgment on these facts.

Finally, Defendant spends a good portion of its brief arguing that Plaintiff cannot prevail on a "disparate impact" theory, citing cases such as *McQueen v City of Chicago*, 2014 WL 1715439 (N.D. Ill April 30). Plaintiff raises no such claim in this action. The Amended Complaint filed January 14, 2022 clearly is a two-Count Complaint, alleging age discrimination under the ADEA and national origin discrimination under Title VII, both in disparate treatment fashion.

**WHEREFORE,** Plaintiff respectfully seeks an Order denying Defendant's motion and setting this matter for trial.

Respectfully submitted,

*By: /s/Richard J. Gonzalez*

Richard J. Gonzalez
Law Offices of Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661
(312) 906-5079
rgonzale@kentlaw.edu

**<u>CERTIFICATE OF SERVICE</u>**

To:     Thomas A. Lidbury & Ebony C. Smith
        Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
        155 North Wacker Drive, Suite 4300
        Chicago, IL 60606
        (312) 558-1220
        Thomas.lidbury@ogletreedeakins.com
        Ebony.smith@ogletreedeakins.com

        I certify that I served a copy of the foregoing document on all counsel of record via the

Court's CM/ECF system on June 13, 2023.

                                        /s/ Richard J. Gonzalez
                                        Richard J. Gonzalez