# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| AFTAB A. KHAN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    **Case No. 21-CV-4827** |
| **v.** | ) |
| | ) |
| **HCL AMERICA INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## DEFENDANT'S REPLY IN
## SUPPORT OF SUMMARY JUDGMENT

ATTORNEYS FOR DEFENDANT

Thomas A. Lidbury
Ebony C. Smith
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
P 312.558.1220
F 312.807.3619

tom.lidbury@ogletree.com/312-558-1230
ebony.smith@ogletree.com/312-558-1252

July 3, 2023

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT ....................................................................................................................1

I.      Ms. Elliott Did Not Rubber-Stamp The Decision, She Made The Decision ........................1

II.     Ms. Elliott's Unbiased Decision Is Not Reviewable In The Courts ...................................2

III.    Ms. Elliott Was Not Duped.................................................................................3

IV.     This Is Not A Mixed-Motives Case ........................................................................5

V.      There Is No Inferential Case ...............................................................................6

        A.      Mr. Khan Was Not Meeting Legitimate Performance Expectations .......................6

        B.      Mr. Khan Can Identify No Comparator ...................................................7

VI.     There Is Nothing Suspicious About The Abandonment Of The Pip Midstream ...............9

VII.    There Is Nothing Suspicious About Not Completing Mr. Khan's Performance
        Review After He Was Terminated...........................................................................9

VIII.   Plaintiff Has No National Origin Claim ..................................................................9

        A.      Plaintiff Has No National Origin Claim Based On A Preference For Visa
                Holders ......................................................................................9

        B.      Plaintiff Has No Other National Origin Claim .........................................10

CONCLUSION ...............................................................................................................11

i

TABLE OF AUTHORITIES

## Cases

*Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1460 (7th Cir.1994) ................................7

*Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973) ......................................................9, 11

*Fane v. Locke Reynolds*, 480 F.3d 534, 538 (7th Cir. 2007) ..........................................8

*Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389 (7th Cir.1991) ................................................................................................10

*Gallagher v. Dart*, 2020 WL 1164499 (N.D. Ill. March 11) ..........................................8

*Kahn v. United States Secretary of Labor*, 64 F.3d 271 (7th Cir. 1995) ...................................3, 5

*Little v. Ill. Dep't of Pub. Health*, 2020 WL 1530736 (N.D. Ill. March 31) .................................2

*Mills v. First Federal Savings And Loan Assoc. of Belvidere*, 83 F.3d 833 (7th Cir. 1996) ..........7

*Naik v. Boehringer Ingelheim Pharms.*, 627 F.3d 596 (7th Cir. 2010) .........................................6

*Ortiz v. Werner Enterprises*, 834 F.3d 760 (7th Cir. 2016) .............................................8

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) .......................................................5

*Raymond v. Ameritech*, 442 F.3d 600 (7th Cir. 2006) ....................................................8

*Schindler v. Seiler*, 474 F.3d 1008 (7th Cir. 2007) .......................................................1

*U.S. v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999) ......................................................1

*Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001 (7th Cir. 2002) ........................................2, 5

*Woods v. City of Berwyn*, 803 F.3d 865 (7th Cir. 2015) .............................................5, 8

**ARGUMENT**

## I.    Ms. Elliott Did Not Rubber-Stamp The Decision, She Made The Decision.

Though Plaintiff admits that Ms. Elliott made the decision (Dkt. 57:¶¶14-15), his *brief* disingenuously asserts that Ms. Elliott blindly "signed off" on, or "approv[ed] the termination." Dkt. 54:2, 8.  He does not state who supposedly made the decision but invites the Court to assume that it was Mr. Chapain, or Mr. Belmont under the influence of Mr. Chapain.  This is empty lawyer argument that is flatly contradicted by the undisputed evidence.

Undisputedly Mr. Chapain had *zero authority* to remove Mr. Khan from the Baxter team or from HCL's employ.   Dkt. 57:¶20.[1]   Undisputedly it was Baxter that expressed its own dissatisfaction with Mr. Khan and directed that he be removed from its project.  Dkt. 57:¶¶8, 11.[2] Undisputedly it was Ms. Elliott who, in light of these events, made the decision to attempt to rehabilitate Mr. Khan with a PIP.  Dkt. 57:¶ ¶8, 12.  Undisputedly it was Ms. Elliott who decided, based on Mr. Khan's insubordination, to abandon the PIP midstream and place Mr. Khan in AAFD status whereby he was subject to termination unless another assignment was found within two weeks.  Dkt. 57:¶¶14-15 ("therefore, I [Elliott] said … we're going to stop this now").

These undisputed facts completely contradict the mischaracterizations in Plaintiff's brief that Ms. Elliott "approved" or "signed off" on the decision to terminate.  Dkt. 54:2, 8.  She made the decision.  This is not an "inference" (Dkt. 54:3) that HCL invites the Court to make.  It is a fact that is indisputable and, in fact, admitted.  Dkt. 57:¶14.

---

[1] Plaintiff disputes paragraph 20 but only to add that Mr. Chapain relayed to Mr. Belmont the complaints Baxter communicated to him about Mr. Khan.  Dkt. 57:¶20.

[2] Strangely Plaintiff admits that Ms. Bork serially complained about Mr. Khan and ultimately demanded his removal and then argues, without citation to legal authority, that this is inadmissible "hearsay."  Dkt. 54:6.  Ms. Bork's complaints and demands are plainly admissible because they are performative and offered to show their effect on HCL.  See *U.S. v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999) ("Performative utterances are not within the scope of the hearsay rule …"); *Schindler v. Seiler*, 474 F.3d 1008, 1010-11 (7th Cir. 2007) ("a statement offered to show its effect on the person who heard the statement is not hearsay").

**II.      Ms. Elliott Was Not Biased.**

There is no evidence that Ms. Elliott was inappropriately biased.  She did not know Mr.

Khan's age, visa status or American national origin; she assumed his national origin was Indian.

Dkt. 57:¶21.  She is older than Mr. Khan and a fellow American.  Dkt. 57:¶21. She made no biased

comment.  Dkt. 57:¶ ¶18-19.  She was unaware that Mr. Chapain, actually or allegedly, had.  Dkt.

57:¶18.  There is no factual basis upon which a reasonable jury could find Ms. Elliott biased.

Such evidence is not supplied by Plaintiff's disagreement with her process or decision.

Apart from inappropriate bias courts do not sit as "super personnel departments" to "second guess"

whether she researched her decision enough or got it right.  *Wells v. Unisource Worldwide, Inc.*,

289 F.3d 1001, 1007 (7th Cir. 2002).  It does not suggest bias that Ms. Elliott did not pull records

to check Mr. Belmont's "word" (Dkt. 54:2) about Mr. Khan's past performance.

Nor is bias suggested by Mr. Khan's relative credentials and experience.   First, his

credentials and experience were mostly irrelevant to his job:

- He has an undergraduate degree in economics, an associates degree in "health sciences," a BA in business, and an MBA focused on finance.   Dkt. 53-1 (Khan Dep. 9:1-10:12, 13:6-14:21).  None of these degrees are needed, or even relevant, to redlining drug labels following a process set forth by Baxter.

- He had no experience redlining drug labels before joining the redlining team.  His prior experience with drug labels was in a quality control role on an assembly line making sure that the lot numbers and expiration dates were printed on them.  *Id.*, at 53-1:11:22-12:24).  He was, therefore, *less* experienced than his colleagues who had been doing it since before he joined the team.

It is not enough to tally up degrees and years without demonstrating why they make one more

qualified for the job at hand.  See *Little v. Ill. Dep't of Pub. Health*, 2020 WL 1530736, *10 (N.D.

Ill. March 31) (plaintiff "relies almost exclusively on the fact that she has a Ph.D." but "never

explains why a Ph.D. in molecular biology makes her more qualified than anyone else for any of

the positions she lists").  Second, no comparison can be made because Plaintiff offers "almost no

information about the qualifications of" other employees on the redlining team. *Id.* Third, *insubordination* need not be tolerated even in the most capable of employees. See *Kahn v. United States Secretary of Labor*, 64 F.3d 271, 279 (7th Cir. 1995) ("We have consistently held that an employee's insubordination toward supervisors and coworkers, even when engaged in a protected activity, is justification for termination"). In sum, Plaintiff's tallying of degrees and years does not even remotely suggest improper bias on Ms. Elliott's part.

**III. Ms. Elliott Was Not Duped.**

Nor is there cat's-paw evidence that Ms. Elliott was tricked *by Mr. Chapain*. All Plaintiff can do is point out that, before Baxter officially ejected Mr. Khan from its project, Mr. Chapain relayed Baxter's growing complaints to Mr. Belmont. Dkt. 54:5. There is no genuine dispute that Baxter actually made these complaints and ultimately ejected Mr. Khan from its project. To the contrary, this is admitted. Dkt. 57:¶ ¶8, 11.[3] In other words, there is no evidence that Mr. Chapain duped Mr. Belmont by fabricating complaints that Baxter never made.

More importantly, there is no evidence that Mr. Chapain duped either Mr. Belmont or Ms. Elliott with respect to the *termination-inducing events* that they personally observed and independently judged for themselves:

- Undisputedly Mr. Belmont directly participated in managing the PIP and "independently" determined that Mr. Khan unduly struggled to perform tasks that Mr. Belmont regarded as "simple." Dkt. 57:¶14; Dkt. 53-2 (Belmont Dep. 34:19-35:6). Undisputedly he personally observed Mr. Khan's unwillingness or inability to follow the established process for redlining drug labels because "he has a different way." Dkt. 57:¶14. Undisputedly he could and did form his own judgment of Mr. Khan's deficient PIP performance. Dkt. 57:¶14.

---

[3] Strangely, despite *admitting* that Ms. Bork serially complained about Mr. Khan and ejected him, Plaintiff quibbles that Mr. Chapain was unable to "cite even one example" of her criticisms. Dkt. 54:6. That is a mischaracterization of his testimony. He testified at length that on multiple occasions Ms. Bork conveyed complaints about "poor performance" though he could no longer recall how many times or her specific words. Dkt. 53-3 (Chapain Dep., 37:18-40:18. His recollection of specifics years after the fact is of no consequence where Plaintiff admits that Ms. Bork serially complained and ultimately ejected Mr. Khan for incompetence (which she also reiterated with specifics in a contemporaneous writing). Dkt. 57:¶¶8, 11.

3

- Undisputedly, Mr. Belmont and Ms. Elliott personally observed Mr. Khan's argumentativeness, yelling and insubordination. Dkt. 57:¶14. Undisputedly Ms. Elliott, on her own initiative, deemed this conduct so inappropriate and unconstructive that she called an end to the PIP meeting and took the decision to abandon the PIP midstream and place Mr. Khan in the AAFD status from which he would be terminated in two weeks unless another assignment could be found. Dkt. 57:¶ ¶14-15. Undisputedly Mr. Chapain figures nowhere in Ms. Elliott's decision made during the PIP meeting. Dkt. 57:¶ ¶14-15.

Contrary to the quotations that Plaintiff takes out of context (Dkt:54:2), Ms. Elliott did not testify that she "took Belmont's word" or "trust[ed]" him about anything apart from Mr. Khan's past and PIP performance:

- The "trust" excerpt was an abstract generality about potential "discrimination" in supervisors' decisions to "move employees around from one position to another." Dkt. 53-4 (Elliott Dep., 77:16-78:2). This testimony was not about Mr. Khan's situation at all.
- The "word" excerpt was specifically about Mr. Khan "prior performance." *Id.* at 18:14-20:23. Plaintiff offers no evidence that Mr. Belmont misreported prior performance or that prior performance even factored into the decision Ms. Elliott made based on insubordination in her presence.

These excerpts are taken out of context and do not provide even an iota of evidence that Ms. Elliott was a marionette whose strings were being pulled by Mr. Belmont, *let alone by Mr. Chapain*.

It is also misleading to suggest that Mr. Belmont and Ms. Elliott were duped about Mr. Khan's insubordination because they failed to consider that his conduct was justified by the alleged "stage show" comment. Dkt.54:6. Obviously, they did not have a blind spot about the stage-show curfuffle since Mr. Khan made them fully aware of it. Dkt. 57:¶9. Though Mr. Chapain denied the comment,[4] Mr. Belmont and Ms. Elliott directed him to "straighten this out" and to conduct his part of the PIP "fairly and properly" and "based on performance." Dkt. 57:¶10. They assured

---

[4] Plaintiff makes much of the fact that after the passage of years Mr. Chapain no longer recalls the conversation at all. But Mr. Chapain testified that he never believed the PIP was a stage show and believes he did not say it was. Dkt. 57:¶9. Ms. Elliott recalls that he denied saying it was a stage show. Dkt. 43-4 (Elliott Dep., 93:14-94:14). And Plaintiff *admits* that the contemporaneous evidence reflects that Mr. Chapain denied making the comment when the events were fresh in his mind. Dkt. 57:¶9.

4

Mr. Khan of the same.  Dkt. 57: ¶10.  Subsequently they both actively and directly participated in the PIP process and made their own, independent judgments.  Dkt. 57:¶¶14-15.  In doing so they were fully aware of the curfuffle, which had no overtones of bias,[5] felt they had handled it, and plainly did not think it justified Mr. Khan's subsequent misconduct.  They were entitled to make this judgment.  See *Kahn*, 64 F.3d at 279 ("insubordination… even when engaged in a protected activity, is justification for termination").  It is not this Court's role to second guess them on that. *Wells*, 289 F.3d at 1007.  Right or wrong, they were not duped by Mr. Chapain.

The cat's paw theory, therefore, is inapplicable.  The "chain of causation" upon which the theory depends breaks down when the decision-maker makes an independent "determination apart from the biased subordinate's recommendation." *Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015).

## IV.     This Is Not A Mixed-Motives Case.

Nor is this a "mixed-motives case" in the mold of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 (1989), because the decision makers were not biased even in some fractional part.  In *Hopkins* there were multiple decision makers and, for many of them, an "impermissible motive played a motivating part." *Id.*, at 250.  Given the showing that mixed motives were at play the Court allowed the defendant to try to prove by a preponderance of the evidence that "it would have made the same decision in the absence of the unlawful motive." *Id.*  This has nothing to do with Mr. Khan's case because Mr. Chapain did not make or influence the decision:

- Undisputedly Mr. Belmont made his own "independent" decision about Mr. Khan's undue struggle with "simple tasks." Dkt. 57:¶14.  There is no evidence he relied on Mr. Chapain about this.  The fact that Mr. Chapain relayed *Baxter's* pre-PIP complaints (Dkt. 54:3, 5) is not evidence that Mr. Belmont relied on Mr. Chapain before, let alone during the PIP.  There is no dispute that during the ensuing PIP

---

[5] Plaintiff admits that the alleged comment was not accompanied by a remark suggesting bias and that he did not suggest to Mr. Belmont and Ms. Elliott that bias was involved.  Dkt. 57:¶9.

Mr. Belmont directly participated and made his own "independent" judgment regardless of what Mr. Chapain believed.  Dkt. 57:¶14.

- Undisputedly Ms. Elliott made her own fully informed and independent judgment about Mr. Khan's attitude and decided to end the PIP and place Mr. Khan in AAFD status.  Dkt. 57:¶¶14-15.  While there is evidence that she relied on Mr. Belmont's assessment of Mr. Khan's deficient PIP performance, as outlined above, there is no evidence that she relied *on Mr. Chapain* for anything.

- Undisputedly, even though Mr. Khan was ineligible, HCL made *multiple* efforts to find another assignment for Mr. Khan but, none being found, his employment terminated.  Dkt. 57:¶15.  There is no evidence that Mr. Chapain influenced any other person at HCL not to choose Mr. Khan for another available assignment.

This is not a mixed-motives case.  Even assuming Mr. Chapain had an improper motive in whole or in part, he made no decision and influenced no one who did, not even in some fractional part.

Moreover, regardless of which party is assigned the burden of proof, there is no genuine dispute that Ms. Elliott would make the same decision in the absence of Mr. Chapain's (alleged) unlawful motive.  Not only *would* she make the same decision regardless of whatever Mr. Chapain's motives were, but that is exactly what she did.

## V.    There Is No Inferential Case.

Contrary to Plaintiff's assertion, he has no inferential evidence that Ms. Elliott was biased. He was not meeting legitimate expectations and he cannot identify a comparator.

### A.    Mr. Khan Was Not Meeting Legitimate Performance Expectations.

Despite Plaintiffs' repeated incantations to the contrary, he had a poor performance history and, at the *relevant*[6] time of his termination, was crashing and burning:

- His historical performance was "threshold," *i.e.*, below expectations, for three out of his four historical reviews, and just barely met expectations in one.  Dkt. 53-4 (Elliott Dep. 65:4-17, 68:4-15).  It is a shocking departure from the evidence for Plaintiff to argue in his brief that he had a "history of positive performance appraisals," even adding the flare that he is "not the one who wrote them" but he

---

[6] What matters is not historical performance but performance "at the time of his termination."  See *Naik v. Boehringer Ingelheim Pharms.*, 627 F.3d 596, 600 (7th Cir. 2010).

"agrees" with them. Dkt. 54:8. This is such a gross mischaracterization of the evidence that it can only be described as a lack of candor to the Court.

- At the time of his termination Mr. Khan was failing in spectacular fashion. Baxter ejected him citing incompetence. Dkt. 57:¶11. He then washed out of a PIP because he could not or would not complete a simple task and could not get through a meeting without behaving so combatively that Ms. Elliott gave up on him. Dkt. 57:¶14.[7] Mr. Khan was not meeting expectations when he was terminated and there is no *genuine* dispute about it.

Plaintiff's only record citation in support of his false incantations that he was doing great is to his own self-serving denial that he was failing and one of his annual reviews that is not at all complimentary. Dkt 54:1 (citing Dkt. 53-1 (Khan Dep. 222) (he "will not acknowledge" that he was not meeting expectations) and Dkt. 54-6:3 ("he has many areas for improvement")). But his own "self-serving" opinion cannot defeat summary judgment. Dkt. 52:14 (citing *Mills v. First Federal Savings And Loan Assoc. of Belvidere*, 83 F.3d 833 (7th Cir. 1996), and *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1460 (7th Cir.1994)).

## B. Mr. Khan Can Identify No Comparator.

Plaintiff's brief dedicates just one sentence to identifying a similarly situated employee. Dkt. 54:5. This lackluster effort is due to the fact that Mr. Khan was forced to admit that he "can identify no comparator – of any age, national origin or visa status – who, like him, was thrown off a team by a client for incompetence, failed a PIP, and yet remained employed." Dkt. 57:¶17. That rules out his ability to identify *anyone* who was similarly situated.

Plaintiff does name a couple names but without any of the necessary specifics:

- Chitti Babu was transferred and promoted multiple times but Plaintiff has no idea whether these moves were deserved. Dkt. 53-1 (Khan Dep., 152:3-155:18).

- Aayushi Kasiwal was a co-worker who Plaintiff admits he knows nothing about in terms of performance, discipline or PIPs. *Id.*, at 93:15-94:2.

---

[7] This is disputed only in semantics. Plaintiff objects to the "characterization" of his admitted combativeness as "inappropriate and unconstructive" because he thinks his conduct was justified. Dkt. 57:¶14. And he astoundingly suggests that washing out of the PIP before completion should not be characterized as a "fail" of it. Dkt. 57:¶17.

Mr. Khan can name names all day long (and tried in his deposition) but he admittedly cannot show

that anyone was *similarly situated*, *i.e.*, was also thrown off a team by a client for incompetence

and failed a PIP. Dkt. 57:¶17 (cannot identify anyone like that).

Plaintiff's last gasp is to point out that "Mr. Chapain" was unable to "name even one H1

Visa employee" who was "ever fired." Dkt. 54:5. First, this misses the mark because it does not

go to identifying someone who remained employed *after being ejected by a client and washing*

*out of a PIP*. Second, it is not the burden of HCL – let alone of one witness like Mr. Chapain – to

prove the absence of a comparator. The burden is on Plaintiff to identify a comparator. *Ortiz v.*

*Werner Enterprises*, 834 F.3d 760, 764 (7th Cir. 2016); *Raymond v. Ameritech*, 442 F.3d 600, 610

(7th Cir. 2006). Even Plaintiff concedes it is his burden to identify comparators. Dkt. 54:5

("plaintiff merely need show … similarly situated employees outside of the protected class [who]

were treated more favorably," citing *Fane v. Locke Reynolds*, 480 F.3d 534, 538 (7th Cir. 2007)).

He plainly cannot carry his burden.

Plaintiff's falls-back to vague generalities is unavailing because he must name names and

specifics. See *Woods*, 803 F.3d at 872 (affirming summary judgment where the plaintiff failed to

"propose the name" of any employee who engaged in conduct comparable to the plaintiff and

remained employed). In *Gallagher v. Dart*, 2020 WL 1164499, *4 (N.D. Ill. March 11), it was

insufficient for plaintiff to make "broad assertions" that he was the "only employee" who was

"denied secondary employment and was therefore treated less favorably than similarly situated

employees." Rather plaintiff's burden was to "name" specific people and identify "common

features … to allow a meaningful comparison." *Id.* Mr. Khan likewise inappropriately retreats to

broad assertions that unnamed "younger employees and employees on an H1 Visa" were

"transferred "seamlessly."" Dkt. 54:5-6. This will not do.

8

**VI.      There Is Nothing Suspicious About The Abandonment Of The Pip Midstream.**

No inference of discrimination arises from the fact that the PIP was set to last four weeks but was terminated after about two weeks.  Dkt. 54:1.  It was at that midpoint when Mr. Khan raised his voice and became argumentative and insubordinate.  Plaintiff tries to justify his conduct but he does not dispute it.  Dkt. 57: ¶14.  Ms. Elliott's understandable decision to abandon the PIP at that point does not suggest it really was a stage show meant to conceal improper bias.

**VII.     There Is Nothing Suspicious About Not Completing Mr. Khan's Performance Review After He Was Terminated.**

Plaintiff suggests that improper bias should be inferred from the fact that his 2020 performance review was not completed, which he characterizes as "inexplicabl[e]" and "odd." Dkt. 54:8.  Plaintiff simply ignores the *obvious* explanation, offered by Mr. Belmont, that he was terminated before it was completed.  Dkt. 53-2:45:12-18.  Nothing about this is inexplicable or odd.  And nothing about this suggests bias.

**VIII.    Plaintiff Has No National Origin Claim.**

The foregoing demonstrates that Plaintiff has no discrimination claim *of any kind* but there are additional reasons why his *national origin* claim, in particular, is not viable.

**A.       Plaintiff Has No National Origin Claim Based On A Preference For Visa Holders.**

After conceding that citizenship discrimination is not covered by Title VII, Plaintiff nevertheless continues to argue that HCL discriminates against American citizens by favoring those with an "H1 Visa."  Dkt. 54:7.  This simply is not a viable claim.  *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 89, 94 (1973) ("Congress did not intend the term 'national origin' to embrace citizenship;" "nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage").  The only way such discrimination could form the basis of a viable claim would be

under a disparate impact theory. *Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389, 392 (7th Cir.1991) (citizenship discrimination though not protected by Title VII could have a disparate impact on national origin since "citizenship and national origin are highly correlated"). H1-Visa status, *i.e.*, non-citizenship status, is highly correlated with non-American national origin. Therefore, a policy favoring H1-Visa status might disparately impact those of American national origin. But Plaintiff expressly disavows any such claim. Dkt. 54:9 ("Plaintiff raises no such [disparate impact] claim."). Plaintiff, therefore, has no claim based on HCL's alleged preference for H1 Visa holders.

### B.     Plaintiff Has No Other National Origin Claim.

This leaves Plaintiff's claim that HCL otherwise favors those of "Indian national origin." Dkt. 54:7. Without the H1 Visa theory, which is not viable, Plaintiff has no evidence whatsoever of a bias in favor of or against *any national origin*[8] whether on the part of HCL in general, or Messrs. Chapain and Belmont and Ms. Elliott in particular. It is undisputed that no comment was made by anyone about national origin. Dkt. 57:¶19. Nor does or can Plaintiff point to any other evidence of a bias for or against any national origin.

Finding himself empty handed, Plaintiff's brief resorts to mischaracterizing a remark that Mr. Khan accuses Mr. Chapain of making. Plaintiff's *brief* asserts that Mr. Chapain "announced his preference for the younger and cheaper H1 Visa employees." Dkt. 54:7. Plaintiff's *testimony*, by contrast, accuses Mr. Chapain of saying that the "company can get rid of you and hire two college grads making less money than you." Dkt. 53-1 (Khan Dep. 228:8-21). The "H1 Visa

---

[8] Plaintiff's theory of *which* national origins are favored and disfavored is a moving target. Plaintiff qualifies for Indian, Pakistan *and* American national origin. Dkt. 53:9. In the beginning he claimed he was discriminated against for being American. See Dkt. 20:¶ ¶5, 20 ("male citizen of the United States" and HCL favors "employees of Indian national origin"); Plaintiff's Response to Defendants Interrogatories (Attached as Exhibit A), Interrogatory 1 (complaining of discrimination against "U.S. Citizens"). His brief opposing summary judgment suddenly switches the focus to his Pakistani credentials. Dkt. 57:6.

10

employees" bit is pure lawyer invention unsupported by the record.  And it is a pointless invention

because it would just run aground on the aforementioned *Espinoza* problem.

**CONCLUSION**

For the foregoing reasons, the Court should award summary judgment in favor of HCL and

against Mr. Khan.

July 3, 2023                                        Respectfully submitted,

                                                   HCL AMERICA INC.


                                                   By: s/ *Thomas A. Lidbury*
                                                          One of its attorneys

Thomas A. Lidbury
Ebony C. Smith
Hilarie M. Carhill
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
P 312.558.1220
F 312.807.3619

tom.lidbury@ogletree.com/312-558-1230
ebony.smith@ogletree.com/312-558-1252
hilarie.carhill@ogletree.com/312-558-1242

11

**CERTIFICATE OF SERVICE**

   The undersigned attorney hereby certifies that on July 3, 2023, the foregoing ***Defendant's Reply In Support of Summary Judgment*** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

      Richard J. Gonzalez
      Law Offices of Chicago-Kent
      College of Law
      565 West Adams Street, Suite 600
      Chicago, IL 60661
      *rgonzale@kentlaw.iit.edu*

      ***Attorney for Plaintiff***

       s/ *Thomas A. Lidbury*

57144249.v1-OGLETREE