UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFTAB A. KHAN, <br><br> Plaintiff, <br><br> v. <br><br> HCL AMERICA INC., <br><br> Defendant. | Case No. 21-cv-04827 <br><br> Judge John Robert Blakey |

### MEMORANDUM OPINION AND ORDER

Plaintiff Aftab A. Khan sues his former employer, HCL America Inc. ("HCL"), alleging discrimination based on national origin and age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. HCL moves for summary judgment. [51]. For the reasons explained below, this Court grants Defendant's motion.

I.  Background[1]

Plaintiff is from Pakistan, moved to the United States, and is now a U.S. citizen. [57] ¶ 17. HCL American hired Khan in 2015. *Id*. ¶ 1. Khan worked on premises within Baxter International, Inc. ("Baxter"), HCL's client. *Id*. In June or July 2019, Khan joined the Labeling Group, with Michael Belmont and Prakash Chapain as his supervisors. *Id*. The Labeling Group worked on redlining drug labels

---

[1] The following facts come from Defendant's Local Rule 56.1 statement of material facts, [53], Plaintiff's response to Defendant's statement of material facts, [57], and Defendant's response to Plaintiff's statement of additional material facts, [59].

(for instance, in order to meet new EU regulations). *Id.* Belmont is a Regional Director for HCL and oversees a large, long-term program for Baxter, including the Labeling Group. *Id.* ¶ 2. Belmont was the "ultimate manager" of the group and could evaluate the team's performance "independently." *Id.* As Project Manager, Chapain oversaw the Labeling Group, distributed work, and managed the team. *Id.* ¶ 3.

Khan alleges that Chapain directed several discriminatory age-related comments to him, including comparing Khan's age to other co-workers', making comments that Khan had "been here a long time" and the "company can get rid of you and hire two college grads making less money than you," and asking questions about how old he was, when he graduated, and when he would retire. [59] ¶¶ 5, 6. Chapain denies making these comments. *Id.* Khan also believes that H1 visa holders were given preferential treatment over U.S. citizens like himself. *See* [57] ¶ 17.

Around 2019, Cheryl Bork became Khan's Baxter supervisor, replacing Michael Chellson. *See id.* ¶ 6. She took over daily management of the redlining team. *Id.* Bork became dissatisfied with Khan's work. *Id.* ¶ 7. Around March 9, 2020, HCL placed Khan on a Performance Improvement Plan ("PIP") based on Bork's expressed dissatisfaction. *Id.* ¶ 8. This came after Belmont's consultation with Human Resources. *Id.* Chapain was tasked with administering the PIP. *Id.* On March 12, 2020, Khan alleged that Chapain, just the day prior, had told him to "consider himself out from HCL-Baxter" and that the PIP was "just a stage show." *Id.* ¶ 9. Chapain denies that he made this comment. *Id.* On March 12, 2020, Bork removed Khan from

2

the Labeling Group, which was within her authority, because "he [wa]s 'incapable of doing his work by himself'" "without multiple issues and errors." *See id.* ¶ 11. Lynne Elliot, the human resources representative for HCL, transitioned Khan to an administrative role to continue his PIP. *See id.* ¶ 12.

Parties do not dispute that Khan's "first PIP deliverable was late and incorrect," nor that "Khan resisted performing the second PIP assignment." *Id.* ¶ 13. Khan stated that Chapain had not helped him understand the assignment, and then Khan, Belmont, Chapain, and Elliot had a meeting about Khan's work on March 23, 2020. *Id.* ¶¶ 13–14. The parties agree that in the meeting Khan yelled and showed insubordination. *Id.* ¶ 14. Elliot ended the meeting and discontinued Khan's PIP, because of this meeting. *Id.* Working to find Khan another assignment, Elliot then posted Khan in an internal system as Advanced Available for Employment ("AAFD") where his "available" status to work was shared with other HCL managers. *Id.* ¶ 15. Unless Khan found an assignment, however, AAFD status meant that his employment would end in two weeks. *Id.* Later, when no assignment materialized, Khan was terminated effective April 3, 2020. *Id.*

Following Khan's removal from the Labeling team, other younger individuals took on his assignments for a while (some of whom were of Indian descent) and eventually Aaron Baynard, an American citizen older than 40, replaced Khan on the team. *Id.* ¶ 16; [59] ¶¶ 22–25.

3

## II. Legal Standard

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its burden, the non-moving party must then identify evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

**III.     Discussion**

Plaintiff claims that Defendant discriminated against him based upon his age and national origin in violation of the ADEA and Title VII when HCL terminated him.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To succeed on a Title VII discrimination claim, an employee must prove: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) causation. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)).

The ADEA likewise protects individuals 40 years of age or older from age-based employment discrimination, which includes termination. 29 U.S.C. §§ 623(a), 631(a); *Formella v. Brennan*, 817 F.3d 503, 514 (7th Cir. 2016). A terminated employee may prevail in an ADEA claim if he shows that "his termination would not have occurred 'but for' his employer's age-based discriminatory motive." *Pitasi v. Gartner Grp. Inc.*, 184 F.3d 709, 714 (7th Cir. 1999). ADEA and Title VII employment discrimination claims "share similar analytical approaches—*McDonnell Douglas* and *Ortiz*—at summary judgment." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 960 (7th Cir. 2021). Courts, however, recognize that causation for Title VII claims

5

requires "a broader 'motivating factor' theory of liability" while "the relevant standard under the ADEA is whether age was the 'but for' cause of the allegedly discriminatory employment action." *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit clarified the methods of proof in employment discrimination cases. The court explicitly instructed district courts to consider the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765. The holistic analysis set forth in *Ortiz* supplements, rather than alters, the burden-shifting framework for discrimination claims that the Supreme Court created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. Of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (discussing *Ortiz*'s impact on methods of proof in employment discrimination cases). The question at summary judgment remains, "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *Id.* (citing *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)).

Courts now conduct the *McDonnell Douglas* analysis if the parties present arguments "in those terms," but also assess the plaintiff's evidence "cumulatively" under *Ortiz*. *See id.* Here, the parties do organize their arguments utilizing the *McDonnell Douglas* framework. Accordingly, the Court will first assess the evidence

6

in accordance with the *McDonnell Douglas* framework and determine whether Plaintiff has established a prima facie case of discrimination. Then, the Court will review the record holistically, asking whether it permits a reasonable factfinder to conclude that HCL terminated Khan based on his national origin or age. *See Ortiz*, 834 F.3d at 765.

### A. *McDonnell Douglas*

*McDonnell Douglas* requires a plaintiff to state a *prima facie* case of discrimination by showing that: (1) he belongs to a protected class; (2) he performed reasonably on the job in accordance with the defendant's legitimate expectations; (3) despite his reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class received more favorable treatment from the defendant. *See Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 834 F.3d at 764–65. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to offer "a legitimate, nondiscriminatory reason for the employee's termination." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). If the employer does so, the employer merits summary judgment "unless the plaintiff presents evidence that the proffered reasons are pretexts for discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995).

Plaintiff's case fails at the outset. Although the parties dispute whether Plaintiff met legitimate expectations, Plaintiff's *prima facie* case fails for the simple

7

reason that he fails to properly identify a single similarly situated employee that Defendant treated more favorably.[2]

The similarly situated employee analysis "calls for a 'flexible, common-sense' examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). The purpose of such an analysis is to "eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Id.* (internal quotations omitted). Thus, while similarly situated employees need not be identical in every conceivable way to the plaintiff, "employees must be directly comparable to the plaintiff in all material respects." *Id.* (internal quotations omitted). In other words, there must be "enough common factors . . . to allow for a meaningful comparison in order to divine whether discrimination was at play." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007). The Seventh Circuit has held that to allow for this meaningful comparison, a typical *McDonnell Douglas* plaintiff must show, at a minimum, that the comparators: "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the

---

[2] Plaintiff's national origin claim cannot rely upon the theory that he was discriminated based on his U.S. citizenship or not having a H1 Visa. [19] at ¶ 20 ("Defendant routinely favored employees of Indian national origin who held 'H1-Visa' status…."). *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) clearly states that "nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage." Therefore, Defendant's national origin discrimination must stem from Plaintiff's Pakistani or other ancestral background, not his U.S. citizenship status. *See id.* at 92, 94.

8

employer's treatment of them." *Coleman*, 667 F.3d at 847 (internal quotations omitted).

Here, Plaintiff has failed to meet the minimum standard articulated in *Coleman*. Plaintiff does not set forth a single, specific comparator employee, giving this Court no opportunity to conduct the "meaningful comparison" for age or national original as required in *Barricks*. 481 F.3d at 560. Plaintiff vaguely alleges that H1 L1 visa employees were successfully transferred to different assignments and that employee Chitti Babu was provided accommodations for transfers but fails to provide further specific information. [54] at 2, 5. Plaintiff notes that several coworkers took over his job after he was fired. [59] ¶¶ 22–23 (according to Plaintiff but disputed by Defendant). These coworkers were likely in their 20s and 30s, and one held an H1 visa and was of Indian national origin. *Id*. Plaintiff also compares an Indian co-worker who was placed on a PIP but not fired with another co-worker over the age of 40 who was fired. *Id*. ¶ 29. Nevertheless, even taking Plaintiff's claim as true, none of these individuals qualify as a comparator, because Plaintiff provides no information to support that these individuals "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *See Coleman*, 667 F.3d at 847 (internal quotations omitted). Plaintiff only asserts that these coworkers generally worked in the same group as Khan, but evidence of common supervision is not enough. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 898–99 (7th Cir. 2018)

9

(finding a comparator was not similarly situated because "the only evidence that the plaintiff and [the comparator] were similarly situated is that they shared the same supervisor. We have no idea whether [she] was otherwise similarly situated, or whether there were any unusual circumstances, mitigating factors, difference in seniority, that would have made the comparison inapt."). Without additional information about these individuals' behavior or treatment at work (there is none cited to in the record), the Court cannot make a "meaningful comparison" for Plaintiff's age nor national original discrimination claims.

Therefore, based on the record, Plaintiff's claims cannot proceed under *McDonnell Douglas,* and he fails to establish a *prima facie* case of Title VII and ADEA discrimination.

### B. *Ortiz*'s Holistic Approach

Plaintiff's claim also fails under *Ortiz*'s holistic approach. Under *Ortiz*, this Court must assess Plaintiff's evidence cumulatively and determine whether the evidence would permit "a reasonable factfinder to conclude" that Plaintiff's age or national origin "caused the discharge or other adverse employment action." 834 F.3d at 765; *David*, 846 F.3d at 224. Upon consideration of the entire record, this Court finds this is not possible.[3]

Plaintiff argues that but for his age or Pakistani national origin, he would not

---

[3] Here, Plaintiff claims that Chapain's comments about his age are enough to show age discrimination. Even accepting that Chapain made the comments (which is disputed), Khan shows no evidence that Bork's decision to remove Khan from the Labeling Group, nor Elliot's decision to terminate Khan's employment from HCL, were causally related to these age comments.

10

have been terminated. This claim fails. The record contains no indication that HCL's decision to terminate Plaintiff was due to his age or national origin. Here, the record confirms that Elliot and Chapain both assumed that Khan was of Indian national origin, [57] ¶¶ 21, 23, which is the national origin that Khan alleges HCL treated favorably. [19] ¶ 20. Khan shows no contradictory evidence that Bork or Elliot's decisions were motivated by Khan's true Pakistani national origin (a fact most likely unknown to Bork and Elliot at the time of his termination). *See* [57], [59].

In the end, fatal to both claims, Plaintiff does not dispute that he was removed from the Labeling Group because he was "incapable of doing his work" by himself "without multiple issues and errors," [57] ¶ 11, nor that his "first PIP deliverable was late and incorrect" and he "resisted performing the second PIP assignment." *Id.* ¶ 13. These undisputed facts are sufficient to support that HCL's termination of Khan was based on performance, not age nor national origin. As the Seventh Circuit has noted, under *Ortiz*, "[a]t the end of the day, the question is simply whether the same events would have transpired if [plaintiff] had been younger than 40 [or of a different national origin] and everything else had been the same." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 725 (7th Cir. 2018) (internal quotations omitted). Considering the evidence as a whole, the answer is yes. There is simply no evidence to suggest his age nor his national origin played a role in these decisions, and Plaintiff's claim likewise fails under *Ortiz*.

11

## C. "Cat's Paw" Theory

Finally, Plaintiff argues that HCL's termination decision was influenced by the bias of his supervisor Chapain, an argument known as the "cat's paw" theory of liability. [54] at 5. The "cat's paw" theory applies "when a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018) (citing *Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015)).

For the "cat's paw" theory to succeed, however, a plaintiff must provide "evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action." *Id.* at 832 (quoting *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013)). Plaintiff fails to provide this evidence.

There is simply no evidence that such bias constituted the proximate cause of Plaintiff's termination. The parties do not dispute that Bork was dissatisfied with Khan's performance and removed him from the group due to this dissatisfaction. [57] ¶¶ 11–12. The facts also confirm that Elliot, who made the decision to end the PIP early and eventually terminate Khan, relied upon her independent observations and interactions with Khan when making employment determinations. [57] ¶¶ 14–15[4];

---

[4] Parties dispute the characterization of Plaintiff's demeanor at the meeting that caused Elliot to terminate the PIP, but parties do not dispute that Elliot used her own evaluation at that meeting to

12

*see Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009) (to avoid liability under a cat's paw theory, "a decision-maker is not required to be a paragon of independence. It is enough that the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." (internal quotations omitted)). Although Plaintiff argues that it was Chapain's "'obligation' to relay negative comments about Plaintiff to his superior," [57] ¶ 20, he does not allege that Chapain's comments or opinion were relied upon in any material way by Bork or Elliot. Since the decision to terminate Khan clearly included other sources of information, the record fails to support Plaintiff's "cat's paw" theory, and it cannot succeed.

Therefore, this Court grants summary judgment as to Counts I and II.

### III. Conclusion

For the reasons explained above, the Court grants Defendant's motion for summary judgment [51]. The Clerk shall enter judgment for Defendant and against Plaintiff. All dates and deadlines are stricken. Civil case terminated.

Date: October 14, 2025

                                             Entered:

                                             John Robert Blakey
                                             United States District Judge

---

make her decision. [57] ¶ 14.